NICK PEAY CONSTRUCTION CO. *v.* MILLER.

Opinion delivered July 10, 1911.

1. PRINCIPAL AND SURETY—LIABILITY OF SURETIES.—Under a bond given for the performance of certain work which stipulated that the sureties should be notified in writing of any act of the principal which might involve a loss for which said sureties were responsible within five days after the obligee had knowledge of such act, with a verified statement of the facts in the case. and that if the principal should fail to comply with the contract the sureties should have the right to assume the contract and to sublet or complete same, *held* that a notice given by the obligee to the sureties that the contractor had abandoned the contract need not be sworn to, and that if such notice was given to the sureties it was their duty to offer to complete the work if they wished to do so. (Page 293.)

2. SAME—LIABILITY OF SURETIES.—Where a bond signed by sureties undertook that the contractor should perform the work in accordance with the terms of the contract and specifications and within the time

agreed upon, and the specifications provided for the payment of a sum as penalty or liquidated damages upon failure of the contractor to complete the work within the time specified, the sureties are not liable for such sum, whether considered as a penalty or as liquidated damages.   (Page 294.)

Appeal from Lee Chancery Court;   *Edward D. Robertson*, Chancellor;   modified and affirmed.

### STATEMENT BY THE COURT.

This suit was brought by appellees, the commissioners of Sewer District No. 1, of the city of Marianna, against the appellants, Nick Peay Construction Company, and bondsmen, for damages for failure to construct and complete by January 1, 1907, a system of sanitary sewers in said city, in accordance with the contract made with the commissioners of said district on July 14, 1906.

A copy of the contract, with specifications showing details of the work, were filed with the complaint as exhibits.

It was alleged that at the time of the making of the contract the construction company, John A. Plummer, R. A. Furth and L. W. Cherry executed a bond to the plaintiffs in the sum of $42,000, conditioned that the said construction company should complete the work within the time according to said plans and specifications;  the death of R. A. Furth and the appointment of Sam Blum as his executor;  that under the contract the amount to be paid to the said construction company was $21,000, and that certain portions of it was to be paid monthly upon estimates made by engineers of plaintiff; that said construction company began work in the month of August, 1906, and continued with many intermissions and delays until about the 1st of January, 1907, when it entirely abandoned the contract and announced it would not complete the same;  that at that time only a small portion of the work was completed; that they carried out their contract with said company, paid the estimates promptly, and always endeavored to assist in carrying out the contract, which it utterly failed and finally refused to do;  that, after the abandonment of the work by said construction company, they advertised for bids for the completion of same, and afterwards made a contract with Hamilton Brothers Construction Company, which said company completed all of said contract except 2,814 feet of

8-inch pipe, 6 feet cut, 425 feet 8-inch pipe, 10 feet cut, and 400 feet 8-inch pipe 11 feet cut, and certain manholes; that they paid said construction company and Hamilton Brothers construction Company a certain sum, and additional expenses for engineering made necessary by reason of the abandonment of the contract, a total sum of $23,570.76, and that it will require a further sum of $2,000 to complete the contract, according to the plans and specifications; that the Nick Peay Construction Company was paid on four different estimates for work a total amount of $7,843.69, and that said company and its sureties are indebted to the plaintiffs, by reason of the said contract, in the sum of $4,870.76, for which it prayed judgment.

It further alleged that, under the terms of the contract, the construction company agreed, if it did not complete the contract within the time agreed upon, that $5.00 per day for the first ten days, and the sum of $10 per day for every day thereafter until the same was completed, should be deducted from the moneys provided for under the contract, and prayed judgment for 468 days' delay in the sum of $4,730.00 as liquidated damages.

Copy of the bond was attached to the complaint.

The bond was in the sum of $42,000, conditioned for the faithful performance of the contract with the commissioners, reciting it, and further specified: "That the sureties shall be notified in writing of any act on the part of the principal, or his agents, or employees, which may involve a loss, for which said sureties are responsible hereunder, within five days after knowledge by the commissioners of such act, with a verified statement of the facts in the case. Second, That if the principal shall fail to comply with all of the conditions of said contract to such an extent that the same shall be forfeited, then the said sureties shall have the right and privilege to assume said contract, and to sublet or complete the same, whichever said sureties may elect to do, provided always it is done in accordance with the contract."

Sam Blum, executor of the estate of R. A. Furth, filed a separate answer, admitting the making of the contract with the execution of the bond by R. A. Furth, the death of the said Furth and his appointment as executor; that the work was to be completed for the price specified, and was begun in the month

of August, 1906;  denied that plaintiffs carried out their contract with the construction company;  that it made proper estimates for the work done in accordance with the contract and in any way endeavored to assist the company in carrying out this contract, and that the company failed and refused to carry out and perform its contract;  alleged that they refused to pay the company the installments as they fell due; that they altered, changed, varied and added to the profile and specifications attached to such contract in many and various ways, causing greater expense to said company and taking more time to do the work, specifying the changes which it alleged caused an additional cost of $3,700 to said company;  that they refused to allow it extra work for quicksand encountered in the construction of the sewer, causing an additional expense of $5,000, when by the terms of the contract it was agreed that no quicksand should be encountered;  that the failure and refusal to allow for the extra cost on account of the quicksand was a fraud upon the rights of the company, and that the engineer wantonly and wilfully and with fraudulent intent refused to classify said earth as quicksand, and to make compensation therefor to the construction company; that said changes, conditions and alterations of said contract made by plaintiff were done without the knowledge and consent of the sureties on said bond and entailed upon the contractor an additional expense of over $9,000; that they wrongfully refused to permit the contractor to complete the work in accordance with the terms of the contract and wrongfully expelled him from it; that, by reason of their action in said respects, by reason of changes and alterations in the plans and specifications and in the contract, and fraudulent acts of the engineer in charge of the work, the sureties are not bound or responsible thereon, same not being the contract for which said sureties became responsible;  alleged that plaintiff violated the contract in not paying the first estimate in accordance with its terms, that the engineer, who was made final arbiter and umpire, fraudulently and wrongfully refused to allow the company such amount as was justly due, and did not pay the amount allowed within the time, nor according to the terms of the contract, and that the succeeding estimates were not commensurate under the contract price for the work performed for the same reason;

that they wholly failed, neglected and refused to notify said sureties of the default of the construction company within five days given them for that purpose by the terms of the bond, and that defendant was not notified, until the institution of this suit, of any act or default upon part of the company, which would involve him or the other sureties in a liability or loss; that they failed to serve proper notice of such a default, and refused to permit the sureties to complete the contract in accordance with the terms of their obligations, but took possession of the work and sewer, and relet it to the other contractors upon changed and altered profiles and specifications for a price unknown to defendant and greatly in excess of the amount agreed to be paid the construction company; that because of this breach of the contract the surety was not bound; denied the payment of the total amount alleged to have been paid for the construction of the sewer, that it would require $2,000 to complete it according to the contract, that they had paid the Nick Peay Construction Company the sum claimed, that said company or defendants were indebted in any sum whatever; denied that there was any contract for the payment of liquidated damages upon the failure to complete the work on time, and that the said Nick Peay Construction Company failed to complete the work as agreed by reason of any default on its part; that the sureties are indebted to the plaintiffs for a penalty for failure to complete the contract or at all; claimed a breach of the bond because of plaintiffs' failure to give the notice at the end of the time and in accordance with the terms required, and also because it failed to permit the sureties to take charge of and complete it in accordance with the contract.

The answer of defendant, L. W. Cherry made about the same allegations.

The Nick Peay Construction Company, composed of Nick Peay, filed an answer and cross complaint, denying specifically the allegations of the complaint, admitted that it made the contract to construct the sewer and claimed that its bid for the work was made and induced among other things by the guaranty in the contract, profile and estimates that no quicksand or rock should be encountered in the execution of the work; that in August, 1906, it entered upon the work,

purchased the necessary materials and machinery to be used in its construction, with heavy expense to itself, delivered it at Marianna, and engaged the services of one hundred men for the construction of the system.

That plaintiff's engineer, Mr. Wilcox, was wholly incompetent and unfaithful to the trust reposed in him, to the annoyance and hindrance, and at great expense to cross complainant; that, by his captious and arbitrary and unjust interferences with his superintendent and workmen, he retarded the work, at great expense to cross complainant; that he refused to make correct estimates of the work done at the time specified in the contract, and to give pipe grades after having caused excavations of appropriate grade to be made; that he required concrete in the manholes after the completion of same that was not called for by the contract; that he arbitrarily changed lines of location from those shown on profile to other streets not shown or mentioned thereon; that in construction of the work it encountered and was compelled to cut and excavate long stretches of quicksand not shown on said profile or estimates attached thereto at heavy extra expense to himself, although cross defendants guaranteed that no such obstacles should be encountered; that said engineer refused to include in such expense and estimates by him furnished, for payment for proportional part of work done; that said engineer failed to notify cross complainants in writing that the work was necessarily delayed and would not be finished within the prescribed time, and without any notice to discontinue the work under the contract, without offering to employ the force to complete the work and to use materials which he had on the line of work, arbitrarily and without notice relet the contract to Hamilton Brothers Construction Company, who took charge of the work to the exclusion of cross complainants; that, under its contract, for the additional work done and labor and material furnished, after deducting all deficits in work to be done under the contract and all moneys paid him upon estimates, there remained due his company for material and labor the sum of $14,515.15 on January 10, 1907; that it was entitled to a reasonable profit, which it would have earned, of the value of $2,500 and interest on both amounts from the 10th day of January,

1907.   Estimates of the quantities of material and work left on the ditch line were filed as exhibits.

Defendants filed a motion to transfer the cause to equity, which was done.   Plaintiffs filed a reply to the cross complaint of the construction company, denying all the material allegations of it.

The contract and bond were introduced in evidence, and the testimony tended to show that the changes made in the plans and specifications from Kentucky to Main streets, and the other at the postoffice, were made at the request of the construction company, and were immaterial, and did not occasion any additional expense, nor delay the completion of the work;   that the amount of 2½ per cent. upon each estimate was reserved in accordance with the terms of the specifications and bond;   that the Nick Peay Construction Company abandoned the contract, and on January 6, 1907, addressed a letter to the city council of Marianna, stating: "In the matter of stopping work on your sewerage contract, I feel it is due you as well as myself that the facts in the premises be known to you as a representative body of citizens and tax payers." He also served, undated, the following notice upon the commissioners of the district:   "To the Honorable Commissioners of Sewer District No. 1, Marianna, Arkansas: . Gentlemen: This is to notify you that I have ordered work stopped on your district, until such time as you may see fit to accord me an equitable adjustment of differences on contract which has been repeatedly broken.     Respectfully, Nick Peay Construction Company."

The commissioners regarded this action as an abandonment of the contract, mailed the following notice to the Nick Peay Construction Company, and to L. W. Cherry and R. A. Furth, sureties, dated January 9, 1907, as follows:

"Marianna, Ark., January 9, 1907.

"Nick Peay Construction Company,

"Little Rock, Arkansas.

"Sirs:–This is to notify you that, owing to your abandonment of the work on sewers in Sewer District No. 1, of Marianna, Arkansas, according to the terms of your contract existing between your company and the commissioners of Sewer District No. 1 of the city of Marianna, Arkansas, that we have

this day, by and with the consent of said commissioners, taken charge of the construction of the sewer and appurtenances as provided for in said contract, and will complete the construction of said sewers and appurtenances, according to the terms and specifications, and that you and your bondsmen will be charged with the expense of completing your contract and *per diem* penalty provided for the time now having expired within which you were to have completed same.

"Approved:                                    Hiram Phillips, Engineer.

   "Max D. Miller.
   "E. W. King.
   "M. H. Ford."

This notice was mailed by registered letter to L. W. Cherry and R. A. Furth, January 11, 1907, and was received by Cherry on January 11, and Furth on January 15, 1907.

The commissioners let a contract for the completion of the work to Hamilton Brothers Construction Company, agreeing to pay therefor $15,650.00, a copy of the contract with and bond of said company being introduced in evidence, and had paid $12,446.00 to said company which had abandoned its contract; that it would require $1,367.19 more to complete the sewer in accordance with the terms of the original contract, and that, because of its abandonment by the Nick Peay Construction Company, the district had been put to an extra expense for engineering of $1,591.86.

The court found that the Nick Peay Construction Company agreed to construct and complete the sewer for $21,000, and executed a bond for the faithful performance of the contract, with J. A. Plummer, R. A. Furth, L. W. Cherry sureties: that said company failed to complete said system in accordance with its contract before January 9, 1909, and absolutely refused to continue the work, and abandoned the same; that the commissioners promptly and duly notified the bondsmen of such abandonment, and that they became liable upon the contract for such damages as should be chargeable to said construction company; that there had been paid to it the sum of $7,843.69; that the amount of Hamilton Brothers contract for finishing the work was $15,650.00, and the amount required to complete the sewer after the second company had abandoned it was $1,367.19, and that the extra engineering expense for

the completion of the work after its abandonment by the Nick Peay Construction Company amounted to $1,591.86, making a total amount due from said company to the commissioners of the district of the sum of $5,452.74, and that plaintiff should have interest at 6 per cent. per annum upon said amount from January 9, 1907, and entered a decree against said company, Nick Peay, L. W. Cherry, J. A. Plummer and Sam Blum, executor of the estate of R. A. Furth, for said sum and interest to date, $1,108.75, in all $6,561.49 and costs.

From this judgment the appeal comes.

*B. S. & J. V. Johnson* and *Rose, Hemingway, Cantrell & Loughborough,* for L. W. Cherry and the estate of R. A. Furth,

Where a contractor abandons his contract, and the owner completes the work without exceeding the contract price, there can be no recovery against the bondsmen of the contractor. 68 S. W. 736. Accommodation sureties are bound only by the strict letter of their contract of suretyship. 82 Ark. 594. The sureties were discharged by acts of the plaintiff. 65 Ark. 552; 66 Ark. 291; 71 Ark. 199; 73 Ark. 476; 93 Ark. 502; 48 Ark. 426; 60 Ark. 190; 82 Minn. 187; 84 S. W. 756; 70 S. W. 464.

*W. J. Lamb* and *H. F. Roleson,* for appellees.

Sureties are not discharged by the making of reasonable changes. 66 Ark. 291. The bondsmen are liable for the breach of contract. 57 Ark. 168; 103 S. W. 160; 183 U. S. 642; 205 U. S. 105; 56 Ark. 405; 73 Ark. 432; 64 S. W. 483; 108 Am. St. R. 42; 108 U. S. 436; 69 Ark. 114; 14 Ark. 315; 56 Ark. 405.

KIRBY, J., (after stating the facts.) It is contended by appellants, the sureties on the bond of Nick Peay Construction Company:

1. That they were discharged by reason of the failure of the commissioners to give the required notice of the default of the contractor within the time specified in the bond.

2. That the sureties were released by reason of material changes made in the work to be done without their consent.

3. That in any event there was no liability on their part for the payment of liquidated damages, no such provision being included in the body of the contract, and the only reference thereto being in the specifications.

4. That they are not liable for the payment of any sum

whatever because of the contractor's abandonment of the work, since the commissioners of the district have not paid out for its completion more than the amount specified in the contract, which was to be paid it upon the completion thereof.

1.    The bond provides "that the sureties shall be notified in writing of any act on the part of the principal, or his agents or employees, which may involve a loss, for which said sureties are responsible hereunder, within five days after knowledge by the commissioners of such act, with a verified statement of the facts in the case." It was also stipulated that if the principal failed to comply with the conditions of the contract to such an extent as to forfeit it, the sureties should have the right and privilege of assuming the contract and subletting the work or completing it in accordance with its terms, whichever they might elect to do.

It is not disputed that the principal, the Nick Peay Construction Company, did abandon the contract, and that its president, on January 6, 1907, notified the city council of Marianna by letter that he had stopped the work on the sewer contract, and notified the commissioners of the district in writing that "I have ordered the work stopped on your district until such time as you may see fit to accord me an equitable adjustment of differences on contract, which has been repeatedly broken."

On the 9th, the commissioners, regarding such action by the construction company as an abandonment of the work, notified it and the bondsmen that they "had taken charge of the construction of the sewer and appurtenances as provided for in said contract, and will complete the construction of said sewers and appurtenances according to the terms and specifications," and that "you and your bondsmen will be charged with the expense of completing your contract and the *per diem* penalty provided for the time now having expired within which you were to have completed same."

A copy of this notice was mailed from Marianna, and received by L. W. Cherry at Little Rock on the 11th of January, and the registry receipt was signed for Furth, by person authorized to receive it for him, on the 15th of January. A copy of the notice was handed J. A. Plummer on that date. The notices were mailed at Marianna, a short distance from Little

Rock, properly addressed, and doubtless both reached there about the same time.

It is true that this notice was not sworn to, but it was not stipulated in the bond that it should be. Since it advised that the contract had been wholly abandoned by the contractor, it was not necessary to make any further statement of the facts, nor contemplated that it should be further verified, and, after written notification by the contractor of the 6th of January to the council and the commissioners that it had stopped work on the sewers, they had five days in which to notify the sureties thereof, and we hold that the notice mailed within the time shown reached them in the usual course of the mail within the time specified, and was a sufficient compliance with the terms of the bond.

The sureties will not be heard to complain that the notice by its terms informed them that the commissioners of the district had taken charge of the work, and would re-let and complete it, holding them responsible for the damages, and thereby prevented them from assuming the contract and completing it in accordance with its terms as they might have done since they did not offer to do so.

According to the law and without regard to the provision in the specifications to that effect, the commissioners had the right to re-let the work, if it was abandoned, and the sureties, according to their undertaking, also had the right to assume the contract and do the work or re-let it, and, having been notified of the default of the contractor, it was their duty, if they had desired to do so, to offer to complete the work themselves, or by subletting it to a contractor of their own in accordance with their undertaking, and the notice that the district would have the work done by another contractor at the time of the notice of the forfeiture of the contract by their principal did not deprive them of this right, nor relieve them of the duty to offer to complete the work if they preferred to do so.

The notice was sufficient, and, having failed to offer to have the work completed after its receipt, they are held to have waived their right to do so, and are not discharged because of the letting of the contract for its completion to others.

2. We do not find the findings of the chancellor that no material alteration or change was made in the plan or im-

provement is against the weight of the testimony, and the changes made were not material, and their consent to such changes was not necessary, and the sureties were not released from their obligation because thereof.

3. There was no stipulation in the contract providing for the payment of a penalty or liquidated damages upon the failure of the contractor to complete the work within the time specified, and such provision is found in the specifications, which, it is true, were referred to in the contract and made a part of it. The sureties, however, should not be held bound for the payment of any such sum, whether it be regarded liquidated damages or a penalty, because they undertook that the contractor should perform the work in accordance with the terms of the contract and specifications, and within the time agreed upon, and there was no agreement in the contract for a deduction on account of delay in the completion of the work.

It is, no doubt, true that they would be bound by the specifications, so far as they relate to the work to be done and the manner of doing it, but certainly it could not be held that liquidated damages for failure to complete a certain improvement within a limited time was a proper part of the specifications of such improvement or the manner of making it, and the sureties in the execution of the bond to secure the faithful performance of the contract, there being no agreement by the contractor for such deduction as liquidated damages on account of the failure to complete the work within the time, cannot be bound to the payment thereof because of any provision in the specifications relating thereto. In other words, such provision, having no proper relation to the specifications for the improvement and not being signed by the contractor, and being one of contract and mutual agreement, should have been included within the contract itself to bind the sureties, who agreed to be bound only for its faithful performance.

4. It is doubtless true that there is no liability against the surety upon the contractor's bond for completion of the work after its abandonment by the contractor, unless its completion costs more than the price agreed to be paid to the contractor for the performance of it.

In this case the contract price was $21,000, $7,843.69 was

paid the first contractor before the abandonment of the work, and a new contract was let for its completion at a certain price; and only $12,444.06 was paid to the second contractor, and the proof shows that the work still uncompleted is of the value and will require the expenditure of $1,267.19 to complete it; all these amounts making the total sum of $21,656.94, an amount larger than $21,000, for which the first contractor agreed to make the improvement. The difference between these amounts is $656.94, the additional amount required to complete the work first undertaken by the contractor for whose performance of it the sureties became liable.

The sureties should be held only to the payment of said difference, the amount required to complete the improvement in excess of the contract price, and not for a further sum as additional expense of engineering, there being no testimony in the record to sustain the chancellor's finding that any sum was paid out by the commissioners or debt incurred for engineering because of the abandonment of the contract by the Nick Peay Construction Company.

The decree is erroneous as to the amount of the recovery, which should be $656.94, with interest from the date of the default, January 6, and it is modified and will be affirmed, and a decree entered here for that sum.

McCULLOCH, C. J., being disqualified, did not sit in this case.