TENNESSEE VALLEY SCHOOL, COMMON SCHOOL DIST. NO. 3, COTTLE COUNTY, v. UNITED STATES FIDELITY & GUARANTY CO. (No. 2067.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 31, 1923.)

I. Principal and surety ⬦≈100(4)—Building contract authorizing changes in construction does not authorize other changes, without notice to surety.

Where the plans and specifications for a school building provide for changes, alterations, and additions in the construction of the building, such changes will not relieve a surety, unless substantially constituting a contract for a different building, but such provision does not authorize changes as to other contract provisions without the surety's consent.

2. Principal and surety ⬦≈100(2)—Material change in building contract releases surety.

Where school building contract, requiring contractor to furnish a surety bond, also required parties of the second part (construed to mean the school district) to place the contract price in the bank subject to draw for material and labor and the contract, without notice to the contractor's surety, was afterwards modified omitting such provision, but substituting instead a provision for monthly payment of 80 per cent. of completed work upon architect's approval, it constituted a material alteration releasing the surety.

3. Principal and surety ⬦≈100(2)—Changing a school building contract to make it enforceable without notice to surety releases the latter.

If a provision in a school building contract, requiring school district to deposit the contract price in a bank not the county depository, was violative of Vernon's Ann. Civ. St. Supp. 1922, art. 2840, and Vernon's Sayles' Ann. Civ. St. 1914, art. 2844, thus making the contract unenforceable, modification of the contract without notice to contractor's surety omitting such provision made a new and enforceable contract, and was a material alteration releasing the surety.

Appeal from District Court, Cottle County; J. H. Milam, Judge.

Action by the Tennessee Valley School, Common School District No. 3, Cottle County, against the United States Fidelity & Guaranty Company and another. Judgment for the named defendant, and plaintiff appeals. Affirmed.

James M. Whatley, of Paducah, for appellant.

J. Ross Bell and W. J. Arrington, both of Paducah, and Seay, Seay, Malone & Lipscomb, of Dallas, for appellee.

BOYCE, J. The Tennessee Valley school, common school district No. 3, Cottle county, Tex., appellant, brought this suit against S. T. West and the United States Fidelity & Guaranty Company, to recover damages for breach of a building contract between the school district and West, the faithful performance of which had been guaranteed by bond executed by West, with the guaranty company as surety. The guaranty company pleaded that it had been discharged by material changes made in the contract after the execution of the bond. Trial was had before the judge without a jury, and judgment rendered in favor of the plaintiff against the contractor for the sum of $3,379.54, but the defense of the guaranty company was sustained, and the judgment rendered in its favor.

On August 28, 1919, the school district and S. T. West entered into a contract in writing which provided that West, for the consideration of $9,550 should furnish all material and labor and erect for the school district a school building as therein provided. The guaranty company, as surety, executed a bond with West as principal, conditioned upon the faithful performance of this contract by the said West. Sometime after the execution of the original building contract, the school district and the contractor, West, without the knowledge or consent of the guaranty company, executed another contract and substituted it for the one first executed, and proceeded under this latter contract. There are a number of differences apparent on the face of those two contracts. Several of these, however, are reconciled, if the plans and specifications are to be regarded as a part of the first contract, which provided for the construction of the building "according to the plans and specifications," without further reference thereto. There was no change in the plans and specifications, and the second contract provided for the building "ac-

cording to the plans and specifications drawn by O. G. Roquemore, architect, and same is hereto attached, signed and identified and made a part of this agreement." Certain "contractual features" of the plans and specifications were put in the body of the second agreement that do not appear in the face of the first agreement. For instance, the plans and specifications contain an agreement that the contractor should keep the building insured for the benefit of the respective parties, as their interests might appear, and also contain an agreement with reference to the time of payment for extra work. These agreements do not appear in the face of the first contract, but are a part of the body of the second contract.

Appellee insists that the "contractual features" of the plans and specifications, above mentioned, cannot be considered in determining whether there is a material difference in the two contracts, the proposition being that such provisions form no proper part of the plans and specifications and could not become a part of the contract, so far as the guaranty company was concerned, by the reference thereto in the body of the signed contract. In this connection it appears that the bonding company was not furnished with a copy of the plans and specifications, but did have a copy of the contract at the time it executed the bond. The appellee cites in support of this contention two cases, Nick Peay Construction Co. v. Miller, 100 Ark. 284, 139 S. W: 1107; United States Fidelity & Guaranty Co. v. Board of Commissions, 137 Ark. 375, 209 S. W. 88. We have not found it necessary to decide this question, because we think that if it be assumed that these provisions of the plans and specifications did become a part of the first contract covered by the bond, yet the second contract made some other material changes in the obligations of the parties which had the effect in any event of releasing the surety.

[1] Both contracts contain some provisions for some details of the work, which would have been properly a part of the plans and specifications but which were stated in the contracts as agreed changes therefrom, and there are some differences in the two contracts in these provisions. The plans and specifications provided for changes, alterations, and additions in the construction of the building. If this agreement became a part of the first contract, then the changes as to matters of this character, made by the second contract, would not relieve the surety. Where a contract under which bond is given provides for alterations and changes in the building, then nothing short of such a change as would constitute "a contract for a different building" would release the surety. Southern Surety Co. v. Nalle & Co. (Tex. Civ. App.) 231 S. W. 404. But provision for a change of this kind does not apply to changes without the surety's consent as to other parts of the contract. Wright v. A. G. McAdams Co. (Tex. Com. App.) 234 S. W. 878. It was held in this case that changes in the time of performance of the contract and consideration to be paid the contractor released the surety, though the contract provided for changes in the plans and specifications under which the building was to be constructed.

[2] Appellee points out two changes made by the second contract, which it is asserted cannot, in any event, be claimed as mere deviations from the plans and specifications. They are as follows: (1) The first contract, after providing that the contractor should furnish material and labor and build the schoolhouse for the sum of $9,550, contained this provision:

"It is furthermore agreed that the party of the second part (the contractor) will place a security bond for the sum of $4,500 in the Kirkland Bank, before starting work. And the parties of the second part will also place the contract price in the same bank subject to draw for material and labor."

This clause does not appear in the second contract but it contains the following provision instead:

"The architect will, on or about the first and fifteenth day of each month after starting of said work, make an estimate, based upon labor performed and material upon the ground and in the construction of the building and will give an estimate of 80 per cent. upon said work and labor. The remaining 20 per cent. will be paid when the building is completed and accepted."

The plans and specifications contained this provision:

"Payments will be made on the contract as follows: The architect will on or about the first and last of each month, make an approximate estimate of the work done since last estimate and the contractor will be paid 80 per cent. of the contract price thereof. The final estimate will be made at the time of the completion of the work, and as soon as the work shall have passed satisfactory inspection, the contractor will be paid 95 per cent. of the final estimate less the amounts previously paid. The remaining 5 per cent. less whatever amount shall have been expended for cleaning up the streets and premises, will be paid after the completion and final acceptance of the building."

(2) The contractor agreed by the terms of the first contract to finish the work "to the satisfaction of the committee." The second contract provided for the completion of the work "to the complete satisfaction of O. G. Roquemore, architect, who will superintend the work." The plans and specifications provided that O. G. Roquemore would superintend the work.

[3] It will be noticed that the provision of the contract, copied above, required the

contractor to put the $9,550 in the bank. The contract appears in the statement of facts and in the transcript as exhibits to both the plaintiff's and defendant's pleading, and in each instance appears as we have copied it. There is no pleading of mistake or suggestion thereof, though the parties treat the contract as providing for a deposit of the money by the school district, and it seems probable that the use of the word "parties of the second part," in connection with the deposit of the money, was the result of mistake in drawing the contract. As both parties have briefed the case on this assumption we will so treat it. The deposit of the money in the bank under the terms of the contract would have provided a trust fund, insuring the availability of the moneys according to the responsibility of the bank for payment on the contract. 7 C. J. 631, § 307. In a contract between individuals or if there was no question as to the powers of the school trustees to make such agreement, it would certainly be considered as material, and an abrogation thereof without the surety's consent would be such a change in the contract as would release the surety. It may be that the provision for the deposit of the money in a bank not the county depository would be in violation of the provisions of article 2840, Vernon's Sayles' Civil Statutes 1922, Supp. and article 2844, Vernon's Sayles' Civil Statutes 1914. If this be true, such fact rendered the contract in our opinion, unenforceable. This illegal stipulation was a part of the consideration of the contract, and its performance a condition to the beginning of the work by the contractor. Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053; McKay v. McKay (Tex. Civ. App.) 189 S. W. 523; C. J. vol. 13, p. 513; R. C. L. vol. 6, p. 682. A change which omitted this provision made a new and enforceable contract and would certainly be material.

It is also suggested that this provision for a deposit "subject to draw for material and labor" in addition to securing the availability of the funds in a particular bank, also provided for the application of the funds to the payment of the indebtedness incurred by the contractor for material and labor, and would prevent the contractor from using the funds for the payment of other indebtedness, leaving his bills for material and labor unpaid. If this be the meaning of the provision, it would, of course, furnish another reason for holding that the second contract made a material change. Such provision would be of material advantage to the contractor's bondsmen. Of course, this would also be true if the contract required the contractor to put the money up in the bank, subject to this condition. The meaning of the contract is not entirely clear. West agreed to furnish the labor and material, and it may be

that the contract meant no more than that, on the certificates of the architect, he should be paid out of the deposit the moneys that would be due him, without reference to the application thereof by him. In view of the conclusion as to the other phase of the case, we need not announce a definite interpretation of the meaning of this term of the contract. We would be inclined to hold that the change in the contract, making the architect the final arbiter of the sufficiency of the work, is also a material change, but we have some doubt as to whether this provision of the contract is valid. R. S. art. 2844.

We are of the opinion that the judgment should be affirmed.