**PORTER et al. v. HOPE et al. (No. 2538.)\***

(Court of Civil Appeals of Texas. Amarillo. Jan. 6, 1926. Rehearing Denied Jan. 27, 1926.)

**1. Corporations ⚖=>661(6)—Foreign corporation may prosecute suit, after relinquishing permit to do business, on cause arising theretofore.**

A foreign corporation may prosecute a suit in courts of state, after relinquishing permit and ceasing to do business in state, on a cause of action arising theretofore.

**2. Principal and surety ⚖=>100(1)—Agreement of obligee under contractor's bond with contractor, changing terms of contract, held to release surety.**

Agreement of obligee of contractor's surety bond with contractor, effecting material change in conditions of contract, *held* to release surety.

---

**3. Principal and surety ☜100(1)—Change in contract between owner and contractor releases surety.**

A material change in a building contract, effected by owner and contractor, or an independent contract between them relative to its material provisions, made without consent of surety, releases surety.

**4. Principal and surety ☜100(2)—Agreement of materialman to accept payment on completion of contract held material change releasing surety.**

Where contract for church building required payment for materials from week to week and before payments to contractor became due, agreement of contractor and materialman, who was obligee of contractor's bond, for payment for materials on completion of contract under which most of materials were delivered, *held* material change releasing surety on bond executed coincident with contract.

Appeal from District Court, Lubbock County; Parke N. Dalton, Special Judge.

Action by the Alfalfa Lumber Company against J. P. Hope and others. Judgment for plaintiff against defendant H. K. Porter and others, but for defendant J. P. Hope and another, and defendant Porter and others appeal. Reversed and rendered.

Robt. H. Bean, Bean & Klett, Roscoe Wilson, and Vickers & Campbell, all of Lubbock, for appellants.

Bledsoe, Woodward & Higgins, of Lubbock, and Homer L. Bruce and Baker, Botts, Parker & Garwood, all of Houston, for appellee Long-Bell Lumber Co.

JACKSON, J. This suit was instituted in the district court of Lubbock county, Tex., on May 29, 1918, by the Alfalfa Lumber Company, plaintiff, against J. P. Hope, as principal, W. A. Carlisle, H. K. Porter, W. F. Schenck, W. K. Dickinson, Sr., and L. D. Rankin, defendants. W. A. Carlisle died and his executors were substituted and are here treated as defendants.

The plaintiff alleges:

That it is a foreign corporation, with a permit to do business in Texas, with an office and place of business in the city of Lubbock. That on the 12th day of April, 1917, the defendant J. P. Hope entered into a contract with certain named parties as a committee acting for and representing the Methodist Episcopal Church South, at Lubbock, by which J. P. Hope agreed to furnish all material and labor for the erection of a church building for the consideration of $29,750, and that at the time of entering into the contract J. P. Hope, as principal, and W. A. Carlisle, W. F. Schenck, H. K. Porter, W. K. Dickinson, Sr., and L. D. Rankin executed and delivered to said committee a certain bond in writing in the sum of $10,000, payable to said committee, "as well as to all persons who may furnish labor and material on the contract;" conditioned that if J. P. Hope should keep and perform the covenants, conditions, and agreement in said contract, pay and discharge all indebtness that he might incur in carrying it out, and complete the building free from all mechanics' liens, then the obligation should be void; otherwise, remain in full force and effect. That the bond contains this provision:

"This bond is made for the use and benefit of all persons who may furnish labor or material on the hereinbefore mentioned contract."

That J. P. Hope entered upon the erection of the building under the terms of the contract, and plaintiff, at various times, sold and delivered to him building material, an itemized account of which, providing that all bills were due the first of each month, and if not paid, were subject to interest, was attached to the petition, and that a balance of $3,970.38, with interest thereon at the rate of 6 per cent. per annum was still due the plaintiff by J. P. Hope, and, by reason of the execution of the bond, the above-named defendants were each bound and obligated, jointly and severally, for said amount.

By trial amendment, plaintiff pleaded that after the institution of the suit the name of the plaintiff, Alfalfa Lumber Company, had been changed to "Long-Bell Lumber Company," and was permitted to continue the prosecution of the suit in the name of the Long-Bell Lumber Company.

The defendants J. P. Hope and L. D. Rankin each secured a peremptory instruction in his favor on his plea of discharge in bankruptcy, but no error is presented involving this action of the court.

The other defendants answered by general demurrer, special exceptions, and general denial, and pleaded, among other things unnecessary to mention, that in the body of the bond the name of W. S. Posey was written as one of the sureties, and that they signed upon the representation of J. P. Hope that W. S. Posey would execute the bond as a surety, but his name was not secured to the bond and it was invalid as to them; that the bond was never delivered to the building committee for the church; that one of the conditions of the contract between J. P. Hope and the building committee was that he should not sublet any part of the contract, which provision he violated; that the contract stipulated that Hope should be paid but 85 per cent. of the estimated value of the labor done and material placed on the ground and paid for on proper certificates at the end of each week after construction was begun, and 15 per cent. was to be reserved; that the church paid more than 85 per cent. in violation of the terms of said contract, and failed to reserve the 15 per cent. as stipulated; that the building committee paid J. P. Hope all

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the money that was due him, and Hope paid said money to the plaintiff, who applied it to the payment of other indebtedness owed to it by Hope for material on other jobs, knowing that the money came from the church.

By their trial amendment, these defendants pleaded that the original contract and bond sued upon by the plaintiff provided the methods of payment to J. P. Hope, the contractor, and, under the terms of the contract and bond, weekly payments amounting to 85 per cent. of the material were to be made; that without the knowledge or consent of the defendants, and in violation of the terms of said contract and bond, the plaintiff, acting by its agent, C. D. Swift, made and entered into an agreement with J. P. Hope to the effect that the material furnished by plaintiff need not be paid for until the building had been completed, which agreement changed the terms of the contract, the performance of which had been guaranteed ·by them; that they were liable as sureties only; and that, by reason of the facts alleged, they were released and discharged from all liability on said bond and contract.

In response to special issues, the jury, before whom the case was tried, found that W. F. Schenck, W. A. Carlisle, H. K. Porter, and W. K. Dickinson, Sr., did not sign the bond as sureties with the understanding that W. S Posey should also sign as a surety; that the bond was delivered to the committee of the church, or to plaintiff, before any material was furnished; that there was an understanding between J. P. Hope and C. D. Swift that the plaintiff would not be paid for the material it furnished until the completion of the building; that the material sued for was used in its construction; that three payments, aggregating $2,958 made by the committee to J. P. Hope were paid by him to plaintiff, but plaintiff had no notice, when such payments were made, that they were proceeds of a payment to Hope on the church building. Upon these findings, the court rendered judgment for $5,358.86 against all of the defendants, except J. P. Hope and L. D. Rankin, for whom a peremptory verdict was instructed on their plea of discharge in bankruptcy, both against the plaintiff and against the other defendants who had pleaded a cross-action against Hope.

The defendants H. K. Porter, W. F. Schenck, W. K. Dickinson, Sr., and the executors of the estate of W. A. Carlisle, Gus Watkins, Emmett Carlisle, C. C. Lane, and Thad Carlisle, hereinafter called appellants, have appealed from the judgment rendered against them in favor of the Alfalfa Lumber Company, or its successor, the Long-Bell Lumber Company, hereinafter called appellee. They also appealed from the judgment releasing Hope, but assign no error on that branch of the case.

[1] Appellants, in their first, second, and fourteenth propositions, urge as error the action of the trial court in permitting the plaintiff to maintain its suit against them, because it was a foreign corporation, without a permit to do business in Texas at the time of the trial, and therefore had no right to sue in the Texas courts, as it was transacting business in Texas in violation of law.

The record discloses that the Alfalfa Lumber Company was granted a permit to do business in Texas on February 13, 1917; that by amendment it changed its name to "Long-Bell Lumber Company" on January 8, 1920; that the Long-Bell Lumber Company surrendered its permit to do business in Texas January 31, 1922; that the contract for the erection of the church was made April 12, 1917, and the material was furnished during 1917 and 1918, and this suit was filed May 29, 1918.

The record also tends to show that at the time of trial the Long-Bell Lumber Company, the successor of Alfalfa Lumber Company, was a foreign corporation, doing business in this state without a permit.

It will be observed that at the time of the contract for the erection of the church, and at the time of the sale and delivery of the material by the Alfalfa Lumber Company to J. P. Hope, and at the time of the institution of the suit in May, 1918, the Alfalfa Lumber Company had a permit to do business in this state.

The case of Deveny et al. v. Success Co. (Tex. Civ. App.) 228 S. W. 295, is a case where the facts involve the exact contention made here by appellants. The court says:

"So we hold that, as appellee's right of action accrued at a time when it was lawfully engaged in business in this state, and its franchise tax for such period had been paid, and it was conducting its business under the authority of a permit issued to it by the state for that purpose and still in force, the courts of the state were open to it to enforce such right, notwithstanding it had in the meantime forfeited its privilege to continue the transaction of such business here."

In support of this position, the court cites Kingman Co. v. Borders (Tex. Civ. App.) 156 S. W. 614; Stark Co. v. Harry·Bros. Co., 57 Tex. Civ. App. 529, 122 S. W. 947; Texas, etc., Co. v. Worsham, 76 Tex. 556, 13 S. W. 384. These decisions, which we think are correct, are conclusive against appellants' contention.

[2] Appellants assign as error the action of the trial court in rendering judgment against them, because, with knowledge of the stipulations in the contract, the performance of which was guaranteed by the bond on which they were sureties, appellee, without their knowledge or consent, agreed with J. P. Hope that he need not pay for the material furnished by it until the building was completed, although the contract provided that the material delivered on the ground should be paid

for before the weekly payment of 85 per cent. on certificates of the committee or superintendent were made.

The contract stipulates:

That the building committee for the church should pay J. P. Hope $29,750, "on certificates of the superintendent or said committee from time to time as the work progresses, to wit, 85 per cent. of the estimated value of the same, being labor done and material on the ground, subject to additions and reductions as hereinafter provided; that is to say, at the end of each week after the beginning of the construction of said building an estimate shall be made of the work done upon the building and the material delivered and paid for on the ground for said building and the remainder on satisfactory completion and acceptance of the entire work after the expiration of 15 days."

The bond is of even date with the contract, and, after naming the building committee and the sureties, obligates the sureties to the committee, "as well as to all persons who may furnish labor or material on the contract hereinbefore mentioned in the sum of $10,-000" to be paid to the committee and "to said parties who may furnish labor or material." The conditions of the bond are that J. P. Hope shall keep and perform the covenants, conditions, and agreements in the contract and shall duly and promptly pay and discharge all indebtedness he may incur in carrying out the contract, and complete the building free from all mechanics' liens, and keep and perform the covenants, conditions, and agreements in said contract contained on his part to be kept and performed at the time and in the manner and form therein specified, and expressly provides:

"This bond is made for the use and benefit of all persons who may furnish labor or material on the hereinbefore mentioned contract."

Appellee, by a counterproposition, urges that it was wholly immaterial as to any understanding or agreement between it and Hope as to when it should be paid, as this had no effect upon, and created no change, in the contract between Hope and the church as to how the church should pay Hope. In support of this contention, appellee relies on the cases of Williams v. Baldwin (Tex. Com. App.) 228 S. W. 554, and Hess & Skinner Engineering Co. et al. v. Turney et al., 110 Tex. 148, 216 S. W. 621.

In the case of Williams v. Baldwin, cited, the owner sued the contractors and sureties, and made the materialmen and laborers parties to the suit, who answered seeking a recovery upon the bond. The bondsmen pleaded that the owner had violated the terms of the contract, which was a part of the bond relating to payments, and that he had changed the plans and specifications for the building without their knowledge and consent, for which reason they were discharged. The court holds that the violation of the terms of the bond by the owner absolutely discharged the sureties from all liability to him, but did not release them as to the materialmen, who had furnished material, and the laborers, who had performed labor, because they did not know of the violation of the terms of the bond by the owner at the time of furnishing the material and performing the labor, and were "unaffected by the subsequent acts of the owner in violating the provisions of the bond." This principle is announced again in Southern Surety Co. v. Nalle & Co. (Tex. Com. App.) 242 S. W. 197.

In the instant case the contention under this assignment is that the sureties on the bond were discharged, not by reason of a violation of the terms of the contract and bond, by the church, the owner of the building, and the contractor, J. P. Hope, but because of an independent agreement between appellee and the contractor, by the provisions of which the terms in the original contract and bond were violated. The bond names all persons who may furnish labor and material on the contract as obligees, and expressly provides that the bond is made for the benefit of all persons furnishing labor or material thereon. On the sale of material by appellee to J. P. Hope, it became an obligee in the bond, and, as such obligee, prosecutes this suit, and is bound by the stipulations in the contract and bond. Alfalfa Lumber Co. v. Hope et al. (Tex. Civ. App.) 225 S. W. 81; United States Fidelity & Guaranty Co. et al. v. Burton Lumber. Co. et al. (Tex. Civ. App.) 221 S. W. 699; Equitable Surety Co. v. United States, 234 U. S. 448, 34 S. Ct. 803, 58 L. Ed. 1394.

In the case of Hess & Skinner, supra, the contract involved was not the one between Hess & Skinner and Bastrop county, for the faithful performance of which the bond had been given, but it was the contract between Hess & Skinner, the contractors, and the Vincennes Bridge Company, the materialman, for the purchase of certain material; and it was an alleged change in the contract between the last-named parties which furnished the basis for the contention of the surety company that by such change it was released.

In the opinion, Judge Greenwood announces, as elementary, the rule that a material change in the terms of a contract on which one is liable as surety, such as extension of time for performance, will discharge the surety from all obligations under the contract, but says:

"There never was any change in the contract guaranteed by this surety company. Such contract was silent as to the terms on which the material for the construction of the bridge was to be purchased. The bond, in effect, authorized the contractor to make his own terms, and we see no good reason why it should be held that this did not include authority, while acting in good faith, to change such terms."

He quotes from the Supreme Court of the United States, in Guaranty Co. v. Press Brick

Co., 191 U. S. 416, 24 S. Ct. 144, 48 L. Ed. 242, as follows:

"The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of 60 days, or whether, after the materials are furnished, the time for payment is extended 60 days, and a note given for the amount maturing at that time."

To the same effect is Southern Surety Co. v. Guaranty State Bank (Tex. Civ. App.) 275 S. W. 436, and Southern Surety Co. v. Klein (Tex. Civ. App.) 278 S. W. 527 (not yet [officially] reported).

The contract under consideration, for the performance of which appellants were sureties, clearly stipulated that the weekly payment by the owner to the contractor of 85 per cent. of the price of the material be made, not on the material furnished, but on the material that had been placed on the ground and paid for; hence the material was to be paid for in cash or in weekly installments, and the contract was not silent as to the terms on which the material was to be purchased, nor did it authorize the contractor to make his own terms in the purchase, nor leave unknown the time of the maturity of the bills for the purchase of material. Therefore none of these authorities answer appellants' contention.

The jury found that Hope and Swift agreed that appellee would not be paid for the material it furnished until the building was completed. There is no testimony that appellants had any notice of the arrangement between appellee and Hope, and no contention is made that they knew of such arrangement.

Appellee, by the sale of the material to Hope, was, by the provisions of the contract and bond, an obligee therein, and if it made an agreement with Hope, to which appellants did not consent, that materially changed the terms and conditions of the bond or made an independent agreement for the material, the sureties were discharged.

In Ryan v. Morton, 65 Tex. 258, Associate Justice Stayton, speaking for the court, says:

"It is well settled that the liability of a surety cannot be extended beyond the terms of the contract out of which his obligation arises. If the contract be altered without his consent, whether he sustain injury or the contract be to his advantage, it ceases to be his contract, and with that ceases his obligation."

In Bullard et al. v. Norton et al., 107 Tex. 571, 182 S. W. 668, Judge Yantis, speaking for the Supreme Court, says:

"It is well settled that sureties are only bound by the precise terms of the contract whose performance they secure, and that any material alterations in the terms of the contract without their consent will release them from liability. This is true whether the change in the contract is injurious to them or favorable to them. There is no reason why this familiar rule should not have application to a builder's contract and bond under the same principles as apply to other characters of surety contracts."

In Wilson v. J. W. Crowdus Drug Co. et al. (Tex. Com. App.) 222 S. W. 223, the court says:

"Whether injury results to the surety or not, the creditor has no right to make any contract with the principal changing the contract, without the consent of the surety to the contract actually made."

In Wright et al. v. A. G. McAdams Lumber Co. et al. (Tex. Com. App.) 234 S. W. 878, the court quotes with approval the general rule with reference to the release of sureties, as stated in R. C. L. vol. 21, p. 1004, as follows:

"It is fundamental that any agreement or dealings between the creditor and the principal in an obligation or debt, which essentially varies the terms of the contract without the consent of the surety, will release the surety from liability. The contract of the surety being voluntary, usually without the expectation of profit or gain, the law regards his liability as strictissimi juris, and demands that he be dealt with in the utmost fairness and good faith. He cannot therefore, either at law or in equity, be bound further or otherwise than he is by the very terms of his contract; and, if the parties to the original contract think proper to change the terms of it without his consent (which, it is not disputed, they have a right to do), he is discharged. When his contract is changed without his knowledge or authority, it becomes a new contract, and is invalid, because it is deficient in the essential element of consent."

In the case of Stephenson v. Nelson, 243 S. W. 1069, the Commission of Appeals holds that the bondsman was released from liability, because the contract for furnishing and installing restaurant and kitchen equipment, the performance of which he had guaranteed, as surety, stipulated that the purchase price was to be paid, $1,985 upon the arrival of the goods at destination, and the balance of $2,000 in 12 equal monthly installments was changed so as to require the payment of the $1,985 before the goods were shipped. The seller failed to comply with the contract, and, in the opinion, the court says:

"The change in the proposition made in the order by the exchange of telegrams, whereby the initial payment was to be made at once, instead of being made on arrival of goods at destination upon draft attached to shipper's order bill of lading, was a material one. * * * Plaintiff in error, as surety on the

bond, was vitally interested in the stipulations concerning the time, and amount of payments."

See, also, Tennessee Valley School Common School District v. United States Fidelity & Guaranty Co. (Tex. Civ. App.) 247 S. W. 595; Southland Life Insurance Co. v. Stewart (Tex. Civ. App.) 211 S. W. 460; McKnight v. Lange Mfg. Co. et al. (Tex. Civ. App.) 155 S. W. 977; Clark et al. v. Cummings, 84 Tex. 610, 19 S. W. 798; American Bonding Co. v. United States, 233 F. 364, 147 C. C. A. 300; Shelton v. American Surety Co. (C. C.) 127 F. 736.

[3] The law is settled that, if the owner and the contractor make a material change in their building contract which is not permitted by the terms thereof, or make an independent contract between themselves relative to its material provisions without the consent of the surety, he is released from liability. We see no good reason why the same rule should not be applied to the materialman who makes himself a party to the contract and an obligee therein by the sale of material to the contractor, and who institutes and maintains a suit to recover on the contract and bond, the terms of which, by his agreement, are materially changed, or a new contract substituted therefor. Did the agreement between appellee and Hope constitute a material change in the terms of the contract between Hope and the church, or did it constitute an independent agreement? The understanding between appellee and Hope, as found by the jury, was not a promise on the part of appellee to forbear, but an agreement by a creditor which deprived it of the right to institute and maintain a suit for its debt until the maturity thereof under the terms of said agreement. The itemized account made by appellee, and which constitutes a part of its pleading, was signed and approved by J. P. Hope, and stipulated that all bills were due the 1st of each month, and, if not then paid, were subject to the payment of interest.

[4] The contract upon which appellee sues, as obligee, provides that the material delivered on the ground should be paid for by the contractor before he received the weekly payments of 85 per cent. of the price thereof from the church; hence the contractor was required to pay for the material received in cash, or, at least, to pay at the end of each week for the material theretofore delivered before collecting his 85 per cent. on the estimates.

The bond provides:

That Hope "shall truly keep and perform the covenants, conditions and agreement in said contract and in the within instrument contained, on his part to be kept and performed, at the time, and in the manner and form therein specified."

The agreement between Hope and appellee made the debt for the material due in a lump sum after the building was completed, which, according to the contract, should have been finished November 1, 1917, but which the record shows was not completed until some time after the 1st of April, 1918. This agreement also permitted the delivery of the material without payment therefor in cash or at the end of each week, and allowed the contractor to collect his 85 per cent. from the church without paying for his material. It also extended the time in which the material should be paid for until the building was completed, which was in April, 1918. This stipulation in the contract was for the protection of the sureties on the bond, as well as the owners of the building; and, if appellee had required the material it furnished to be paid for in cash or weekly, according to the express terms of the contract, the balance of the principal for which it sues, and the interest thereon, would not have accumulated.

In our opinion, this agreement constituted a new contract, or, at least, materially changed the terms and conditions of the contract made for the benefit and protection of the materialmen who furnished material, one of whom appellee is. By this agreement, the provision of the contract providing the method and terms of payment for material was disregarded, in so far as appellee was interested.

The record discloses that the church paid the consideration agreed upon for the building, and that approximately $3,000 of the money paid by the church to the contractor, J. P. Hope, was by him paid to appellee and credited upon other indebtedness owed by Hope to appellee for material used by him in other buildings. True, the jury found that appellee did not know from what source this money was obtained, but this in no way minimizes the injury to appellants, nor the necessity of collecting for the material furnished according to the terms of the original contract.

The sureties had the right to expect and require that appellee, if it furnished material, relying upon their obligation as sureties on the bond, would furnish it on the terms and conditions stipulated in the contract; and appellants were not required by law to anticipate that Hope, whose sureties they were, and appellee, who made itself an obligee, would make a new agreement, or materially change the terms of the contract which they had guaranteed. Ryan v. Morton, and Bullard et al v. Norton et al., cited supra.

Appellee insists that, if the agreement between it and the contractor forms the basis of any defense for the appellant sureties, it was essential for them to prove when such agreement was made relative to the time the material was furnished; and, as the evidence is conflicting as to such time, and no request for a finding on such issue was made, the presumption is that the court found that the

agreement was made at such time as would support the judgment.

The testimony of C. D. Swift, the agent of appellee, who sold the material to J. P. Hope, is that he knew about the bond and contract being made between the church committee and Hope before he sold the lumber; that no one acted for him in approving the bond, but that he approved it himself, and did not talk with the church about it; that he read the contract between Hope and the church, and promised to wait for the payment for the material sold until the church was completed; that he did not have this agreement at the time the contract was made, but something like a month or two afterwards; that he did not demand pay for the material from Hope until the job was completed, and the reason he did not apply some of the money he received from Hope, on the church job was because he thought he would get all his pay for material at one time; that he did not remember a conversation with Mr. Hope, in which he agreed to look for his pay out of the 15 per cent. reserved in the contract.

J. P. Hope testified that C. D. Swift agreed to wait for the pay for the material until the church was completed; that he (witness) thought the 15 per cent. reserved would cover his bill for material on the church job; that the material was furnished with the understanding that the bill was not to be paid until the church was completed, and that C. D. Swift agreed to look to the 15 per cent. reserved for the pay; that the agreement with Swift was had before very much, if any, of the material was furnished.

The record discloses that J. P. Hope was engaged in the performance of several other building contracts, and was indebted to appellee in various sums on each of the other contracts, and that this was the only contract which was secured by a bond, so far as appellee knew; that the contract was dated April 12, 1917, and, by its terms, the building should have been completed November 1st of that year, but was not completed until about the 10th of April, 1918.

The books of appellee, which it introduced in evidence, show, that it furnished the first material on the church job April 20 and 21, 1917, and continued to furnish material from time to time thereafter until April 8 and 10, 1918, and these books gave sufficient data to determine the material that had been delivered, and the price thereof at the end of each week and month, from the beginning of the building until it was completed.

The evidence construed most favorably for appellee is not sufficient to sustain a finding that the agreement between Hope and Swift, which the jury found was had, could have been later than 2 months after the written contract between Hope and the church was executed; and the record shows the material that had been furnished at that time and the price charged therefor.

However, as we view the record, the exact time of said agreement is immaterial, whether before any material was furnished or within 2 months thereafter, because after it was made most of the material was delivered; and the only conclusion to be drawn from the testimony is that the agreement, whenever made, covered the bills then due on the church job and the bills thereafter incurred.

The uncontroverted testimony shows that Swift agreed to look to the 15 per cent. reserved for the bills of appellee, but it is unnecessary to determine whether appellants' pleadings are sufficient to include this as an independent agreement or not, because our decision has been reached without considering such an agreement.

It is our opinion that the agreement made between C. D. Swift and J. P. Hope, as found by the jury, released appellants from all obligations to appellee; and the judgment of the lower court in its behalf is reversed and here rendered. If we are correct in the foregoing conclusions, the other errors assigned are immaterial. The judgment as to all other parties to the suit is affirmed.

The motion for rehearing is overruled, and this opinion substituted for the original, which is withdrawn.