## ÆTNA CASUALTY & SURETY CO. v. RUSSELL et al. (No. 1744.)

Court of Civil Appeals of Texas. Beaumont. Jan. 3, 1929.

Rehearing Denied Feb. 27, 1929.

Harry P. Lawther, Terrell & Miller, and J. P. Miller, all of Dallas, for appellant.

Gib Callaway, of Brownwood, for appellees.

WALKER, J. On the 8th day of March, 1926, T. A. Russell contracted in writing with F. C. Herbst for Herbst to build him one brick building and to remove and repair a wooden building for an agreed consideration of $18,000, which, by additions and changes provided for in the contract, was increased to $18,317.80. Appellant, as surety, joined with Herbst in executing a bond to appellee in the sum of $9,000 to secure the faithful performance of the contract. The wooden building was moved and repaired, but Herbst abandoned his contract without finishing the brick building. Appellee gave due notice to appellant of Herbst's default, as required by the bond, whereupon appellant denied all liability on its bond on the ground that appellee and Herbst had breached the following condition of the contract:

"Payments of the value of all work executed satisfactorily based upon the estimated value thereof as determined by the owner will be made every week, said amounts covering payment for labor only, and said first party reserves the right to require each week a payroll receipt from all men employed showing full payment to all laborers as said amount is advanced by first party; and payment of 75% of the value of all material furnished in the construction of said building will be made every two weeks, the owner reserving the right to require a receipt from the concerns furnishing said material showing payments made to said concerns and the payment of the other 25% of the balance covering all materials up to the full amount of said contract price will be made after final approval and acceptance by first party of all other material and work embraced in this contract. Before or at the time final payment is made second party agrees to furnish receipt of all bills of whatsoever character paid and make an acceptable contractor's affidavit to that effect."

Appellee then brought this suit, pleading the contract and bond, Herbst's default, due demand upon appellant, and prayed for his damages in the sum of $4,853.11. Among other defenses, appellant pleaded breach of the above-quoted clause of the contract. The trial was to a jury, and on its verdict judgment was entered in favor of appellee against appellant and Herbst for the sum of $3,960.03, together with an attorney's fee of $500, under the conditions of the bond, and an additional judgment against Herbst for $180.

The parties agree that the facts were without dispute, and on the substantive law of the case regulating their relations to each other, as announced by the Supreme Court in Bullard v. Norton, 107 Tex. 571, 182 S. W. 668, that any material alteration in the terms of the contract without appellant's consent would release it from liability, and that whether the change in the contract was injurious to appellant or favorable to it. The facts may be summarized as follows:

(1) Appellant and Herbst entered into a contract in writing containing the above-quoted clause, whereby Herbst was to build for appellee one brick building and move and repair one wooden building for $18,000, which, by additions and changes allowed by the contract, was increased to $18,317.80. Appellant entered into a bond with Herbst in

the sum of $9,000, payable to appellee, to secure the faithful performance of the contract.

(2) The wooden building was moved and repaired in accordance with the contract, and for this work, under the contract, Herbst was allowed $2,000 of the contract price.

(3) Herbst abandoned the brick building before it was completed. The expense of finishing the building as per the contract was small, and the amount involved thereby was not a controverted item.

(4) During the progress of the work, Herbst presented all his labor bills to appellee, in accordance with the express conditions of the contract, as quoted above, and appellee duly paid the labor bills when presented to him.

(5) "Every two weeks" Herbst presented to appellee bills for the "value of material furnished in the construction of said building" as the material was furnished, and appellee duly paid to Herbst 75 per cent. of all the bills thus presented to him.

(6) Herbst continued on the job, presenting labor bills "every week" and material bills "every two weeks," and appellee continued paying all the labor bills in full and 75 per cent. of the material bills thus presented to him until he had paid to Herbst the full contract price of $18,317.80.

(7) When appellee notified Herbst that all the contract price had been exhausted, Herbst abandoned the contract on the ground that he was without funds to finish it.

(8) All the money paid by appellee to Herbst on the contract was used by Herbst in payment of labor and material bills incurred by him in executing the contract.

(9) At the time Herbst defaulted, there were unpaid material bills in the sum of $4,123.91 for material used under the terms of the building contract in the construction of the brick building.

(10) The total cost of the material used in both buildings was $11,485.39. The total cost of labor under the contract was $10,956.32.

Appellee paid to Herbst on material bills $7,361.48. The amount unpaid was in excess of 25 per cent. of the total cost of material. The jury found that appellee retained in his hands "at all times, until after the defendant the Ætna Casualty & Surety Company had refused to complete said building and pay the balance of the bills then due for material used * * * at least twenty-five per cent. of the total amount due for said material under the terms of the contract introduced in evidence." Appellants excepted to the submission of this issue, on the ground that it involved a conclusion of law to be drawn by the court from the undisputed facts, and that, on the undisputed facts, verdict should have been instructed in its favor. Appellee agrees with appellant that the issue is one of law and not of fact, but insists that on the undisputed evidence verdict should have been instructed in his favor. The parties then being in agreement on the facts and on the substantive law of the case regulating their respective rights, we have before us only one question: Upon the agreed facts, did the appellee and Herbst make material alterations in the building contract? If they did, appellant was released. If they did not, judgment was properly entered against it.

Surety contracts are strictly construed in favor of the surety. The rule is thus stated by 32 Cyc. 73: "Sureties are said to be favorites of the law, and a contract of suretyship must be strictly construed to impose upon the surety only those burdens clearly within its terms, and must not be extended by implication or presumption. This rule is followed both at law and in equity. Construction in favor of the surety should not, however, be carried to the length of giving the contract a forced and unreasonable construction with the view of relieving him."

The surety assumes no burden not clearly within the terms of the contract. If there is an ambiguity, the contract must be given the construction most favorable to the surety. But the rules for construing surety contracts, as with all other contracts, have been devised to assist in ascertaining the intent of the parties. This intent, when ascertained, is the contract, and must be enforced. Though sureties are favorites of the law and must be given the benefit of all ambiguities, yet it must be borne in mind that the parties to such contracts are trying to assume reciprocal duties towards each other, and therefore a surety contract must not be given "a forced and unreasonable construction," with a view of relieving the surety; that is to say, the contract should not be so construed as to make it null and void unless such a construction is absolutely imperative. This is so because it was not the intent of the parties to make that kind of contract. Construing the building contract in the light of these fundamental rules, what was the intent of the parties in relation to the 25 per cent. retainage? This inquiry is pertinent because, if appellee has violated that intent, then he has no cause of action against appellant. We think the trial court has given the contract the correct construction. The parties did not undertake to say by their contract what part of the contract price was to be applied to labor bills nor what to material bills. The obligation to pay the labor bills in full as and when presented was absolute. The obligation to pay 75 per cent. of the material bills as and when presented was absolute. There was nothing in the contract saying when the material should be bought, but, of course, it had to be bought before the labor could be performed. The labor bills amounted to $10,956.32. When the material bills were presented to appellee, there being no agreement as to the *amount* of these bills to be paid by

him, but only the *percentage*; how could he have refused the percentage payment without breaching his contract? The prompt and punctual payment by appellee was an absolute obligation. There was nothing in his contract compelling him to estimate, or aiding him in making such an estimate, the probable cost of future labor bills, so that he might retain funds to meet them. That the material bills might be in excess of the contract was the very contingency contemplated by the surety bond. Appellant bound itself to pay these bills on condition that appellee would pay the labor bills in full as and when presented to him and 75 per cent. of the material bills as and when presented to him, and appellee has faithfully discharged that obligation to the extent that these bills were duly paid by him and all the contract price went into the contract. Appellant has been given the benefit of every cent provided by the contract for its indemnity and of the 25 per cent. retainage on the material bills. Appellee and Herbst did not finish the building, and, having paid all the bills, call upon appellant to respond on its bond. But, working under an ambiguous contract, they give it the only construction that would not have nullified it.

That the contract was subject to no other construction seems to us obvious from appellant's brief. It has offered no construction that would have permitted the construction of the brick building. It does not suggest any specific sum nor any method by which appellee could have ascertained a specific sum that he should have retained in his hands or was bound to retain. It simply says that appellee contracted to withhold 25 per cent. of the material bills, and, not having any money in his hands when the contract was abandoned by Herbst, has breached the retainage clause. Does the contract mean that appellee was to retain 25 per cent. of the difference between the labor bills and the balance of the contract price? As already suggested, there is nothing in the contract by which this sum could have been ascertained. Nor does appellant suggest that appellee was to retain and have in his possession 25 per cent. of the total cost of the material bills, nor does he suggest how appellee could have ascertained this amount. Appellant must adopt one or the other of these constructions, for, if appellee was bound to withhold any specific sum and have it in his possession upon breach of the contract by Herbst, appellant must find that obligation in the bond. In our judgment, to adopt either construction would be to give the contract "a forced and unreasonable construction," resulting in the discharge of appellant on the ground that the contract was so ambiguous as to have no ascertainable intent. The parties were not so contracting when Herbst agreed to build the brick building and move the wooden building and when appellant agreed for a premium of $180 to become his

surety for the faithful performance of his contractual obligation.

In what we have said we have not overlooked the following clause from the above-quoted conditions of the contract: "The payment of the other 25% of the balance covering all materials up to the full amount of said contract price will be made after final approval and acceptance by first party of all other material and work embraced in this contract."

This clause was inserted anticipating that Herbst would be able to do the work and pay all the bills out of the contract price, in which event 25 per cent. of the material bills would have been in appellee's hands and there would have been no ambiguity as to the liability of the parties. The clause, "after final approval and acceptance by first party of all other material and work embraced in this contract," has no meaning when construed apart from the instrument as a whole. The parties provided for moving and repairing the old house at $2,000, and building the brick house for the balance of the contract price. The clause under discussion was intended to regulate the payment of all work. As we construe this clause, the parties anticipated that the work would be done within the contract price, and retainage was to be paid only after all the work had been accepted. But that was not the result. The cost greatly exceeded the contract price. Appellee having given the contract the only practical construction, in relation to the retainage, it should not be said that in doing so he had made a material alteration in the terms of the contract secured by appellant's bond. Though the parties are in agreement on the substantive law of the case, appellant, in addition to Bullard v. Norton, supra, cited Larkin v. Pruett Lumber Co. (Tex. Civ. App.) 209 S. W. 443; Porter v. Hope (Tex. Civ. App.) 279 S. W. 535; Pratt Lumber Co. v. T. H. Gill Co. (D. C.) 278 F. 783. These decisions are only additional authority in support of the proposition announced by Bullard v. Norton.

On our construction of the contract and of the evidence, it becomes unnecessary to discuss the assignments against the argument of appellee's counsel.

For the reasons given, the judgment of the trial court is in all things affirmed.

### On Rehearing.

Appellant criticizes our fifth and sixth conclusions of fact, saying it did not agree with appellees that the facts thus stated are correct. We understood from the oral argument and from appellant's brief that it agreed to these facts, but, as it now says we are in error in so concluding, we withdraw the statement. Appellant says that the true facts are that appellee paid the labor bills in full as and when presented to him, and that the amount sued for was for material bills he knew nothing about until the contract had been abandoned. The fifth and sixth con-

clusions of fact have abundant support, not only in the evidence, but also by the jury's finding answering question No. 4, which is reflected by our opinion. To this issue the jury answered, "Yes," and of this answer appellant says in its brief, "the jury could not have answered otherwise."

This case was not tried in the lower court nor briefed in this court on the theory that appellee breached his contract by paying the weekly estimates in full as and when presented to him, for, as found by the jury's verdict, the payments so made were in accordance with the 25 per cent. retainage clause. Appellant defended upon the ground that appellee, though retaining 25 per cent. every two weeks, continued his material payments until all the contract price had been exhausted. It was appellant's theory that appellee, not having any of the contract price in his hands when he called upon it to respond under its bond, had breached the contract. It was its theory that Herbst should have been paid some sum less than the contract price; that, when he abandoned the contract, appellee should have owed him some amount on the contract price, and that this amount, under the contract, should have been 25 per cent. of the value of the material used. Though there were unpaid bills in excess of the 25 per cent. retainage, and under the jury's verdict this amount was at all times owing, because appellee paid to Herbst the full contract price and because Herbst had nothing coming to him from appellee, appellant insisted in oral argument and in its brief that the contract had been breached. Appellant's criticisms of our conclusions of fact are overruled, as is also its motion for additional findings of fact.

As a proposition of fundamental error, appellant now suggests for the first time that it is not liable because appellee was under no obligation to pay the bills sued for in this case. It says that appellee, under the uncontradicted evidence, paid the contractor, Herbst, the full contract price without notice from the holders of the material bills of their claims, and therefore under article 5463 he was protected against liability. We quote as follows his argument on this proposition:

"It thus appears that the payment by appellee of these unpaid labor and material bills was purely a voluntary act upon his part. He did not owe these bills. The debts were those of Herbst, the contractor. The holders, not having given appellee notice of their unpaid claims before he had paid to the contractor the full amount of the contract price, could fix no mechanic's lien upon the improvement or property, and appellee was, therefore, under no necessity to pay these bills.

"Appellant was under no obligation to pay them. It had not undertaken by its bond to pay all the labor and material bills that

Herbst contracted in the performance of his contract. It only undertook to indemnify Russell 'against loss or expense resulting from the failure of Herbst to pay all labor and material bills in connection with the contract.' Appellee having paid to Herbst the full amount of the contract price, without notice of any unpaid labor or material bills, the failure of Herbst to pay said bills could not, as a matter of law, result in loss or expense to appellee. He did not personally owe the bills, and the holders of the same could not fix a mechanic's lien upon his improvement or property for the amount thereof."

We decline to review the facts or make any conclusion of fact or of law on this proposition presented for the first time on motion for rehearing. The proposition is not one of fundamental error. Yardley v. Houston Oil Co. (Tex. Civ. App.) 288 S. W. 861.

The motion for rehearing is overruled.