Burch & Woodruff, of Decatur, and Edwards & Hughes, of Tyler, for appellee.

HARVEY, P. J. The Court of Civil Appeals for the Second District has submitted its certificate containing two certified questions. The certificate shows that N. J. Harris was conductor on a freight train of the Chicago, Rock Island & Gulf Railway Company, which was traveling south towards the town of Bridgeport, in Wise county, Tex. Harris was in the caboose of the train. Just ahead of the caboose was a cattle car. The running-board on top of this cattle car is alleged to have been defective. When the train whistled for Bridgeport, Harris went out of the caboose onto the front platform thereof. This was the last time he was seen alive. When the train reached the station, he was not on the train. On search being instituted, his dead body, cut in two, was found on the railroad track some distance from town. In the plaintiff's petition, it is alleged that Harris, in stepping from the top of the caboose to the running-board on the top of the cattle car, was caused to fall between the cars, by the defective condition of said running-board. Numerous circumstances shown in evidence are set out in the certificate, as having possible bearing on this issue. The suit is for the recovery of damages resulting from the death of Harris. The certified questions are as follows:

"1. Under the facts as shown above, in connection with all other testimony shown in the statement of facts, accompanying this certificate, was there sufficient evidence to show that Harris fell off the train as he was attempting to step from the running board on the caboose to the running board on the cattle car?

"2. Was the evidence sufficient to sustain the allegations of plaintiff below that in attempting to step from the caboose to the cattle car he stepped on the extension of the running board on the cattle car, and that said extension vibrated or gave way to some extent and he thereby was thrown from the car?"

■■ By these questions the Supreme Court is called on to determine a fact question, that of the sufficiency of the evidence to prove facts in issue. The Supreme Court has no jurisdiction of fact questions. Besides this, the certificate infringes the rule against certifying the whole case to the Supreme Court. Owens v. Tedford, 114 Tex. 390, 269 S. W. 418.

We recommend that the certificate be dismissed.

CURETON, C. J. The opinion of the Commission of Appeals recommending the dismissal of the certificate is adopted, and the certificate is dismissed.

## ÆTNA CASUALTY & SURETY CO. v. RUSSELL et al. (No. 1150—5448.)

Commission of Appeals of Texas, Section B.
Feb. 19, 1930.

Harry P. Lawther, of Dallas, for plaintiff in error.

Gib Callaway, of Brownwood, for defendants in error.

SHORT, P. J. The defendant in error employed Fred C. Herbst, a contractor, to erect a brick building and to move and repair another building for a price of $18,317.80, the contractor to pay out of this sum for all the labor and all the material used in the construction of the brick building and the repair of the other. The contract between these two parties was reduced to writing, and, among other things, this language was used:

"One Herbst and the Defendant in error, Russell, entered into a builder's contract whereby said Herbst agreed to *furnish all material and labor* and to perform the work specified in the contract for a consideration of $18,000.00, increased to $18,317.80 by additions and changes provided for in the contract. To secure the performance of the contract, Herbst entered into a bond with Plaintiff in Error, as surety, in the sum of $9,000.-00. As to the manner of payment, the contract provided that payments for labor were to be made in full every week; the payments for the material were to be made every two weeks, the provision being * * * *pay-ment of 75% of the value of all material furnished in the construction of said building will be made every two weeks. * * * Payment of the other 25% of the balance covering all materials up to the full amount of said contract price will be made after final approval and acceptance by the first party of* all other material and work embraced in this contract."

The defendant in error required Herbst to procure the execution of a $9,000 bond, which he did, by securing as his surety the plaintiff in error. The contractor having failed to comply with his part of the contract, and the surety company having failed to comply with the demands of the defendant in error, to pay what the latter had assumed he had been compelled to pay, in order to release his property from alleged liens against it, by reason of Herbst's failure to fully pay for labor and material, this suit was brought by the defendant in error, and, upon a trial to a jury with the submission of special issues, based upon the answers thereto, judgment was rendered against the plaintiff in error for $3,960, plus $500 attorney's fees. Upon appeal to the Court of Civil Appeals, the judgment of the trial court was affirmed [14 S.W.(2d) 78], and writ of error was granted upon the error assigned, committed by the Court of Civil Appeals, in construing the following language, among other things, upon which the bond was conditioned: " * * * To indemnify Russell against loss or expense resulting from the failure of Herbst to pay all labor and material bills in connection with the contract." The Court of Civil Appeals held that defendant in error bound himself to pay all of the labor bills as and when presented to him, and 75 per cent. of all of the material bills as and when presented to him, and that the plaintiff in error obligated itself to guarantee the compliance by Herbst with the obligations imposed by the terms of the contract. It is the contention of the plaintiff in error that, under the quoted provisions of the contract, the company's obligation was to indemnify defendant in error against any legal liability by reason of the failure of Herbst to pay any labor or material bills.

At the conclusion of the testimony, the plaintiff in error requested the court to deliver to the jury a summary instruction in its favor. This was refused, and the alleged error, committed by the trial court, has been duly preserved in the record. We have read the statement of facts and the findings of fact by the Court of Civil Appeals, and have reached the conclusion that the plaintiff in error was entitled to have this instruction given.

The Court of Civil Appeals, in its opinion, correctly says: "The parties agree that the facts were without dispute, and on the substantive law of the case regulating their relations to each other, as announced by the Supreme Court in Bullard v. Norton, 107 Tex. 571, 182 S. W. 668, that any material alteration in the terms of the contract without appellant's consent would release it from liability, and that whether the change in the

contract was injurious to appellant or favorable."

The testimony of the parties, as well as that of the other evidence in the case, being without dispute to the effect that the defendant in error, in his contract with the contractor, reserved "the right to require each week a pay roll receipt from all men employed showing full payment to all laborers as said amount is advanced by first party," and further that the owner reserved "the right to require a receipt from the concerns furnishing said materials showing payments made to said concerns and the payment of the other 25%, or the balance covering all material up to the full amount of said contract price, will be made after final approval and acceptance by first party of all of the material and work embraced in the contract," and the testimony being further without dispute that, after the owner had paid the contractor the full amount of the contract price, he then discovered for the first time that the contractor had failed to pay laborers' bills, amounting to more than $1,000, and materialmen, amounting to nearly $3,000, and it being apparent that the provisions in the contract above quoted were material parts of it, in which the plaintiff in error had a substantial interest as surety, it clearly appears that these quoted provisions of the contract were not complied with by the defendant in error.

While the defendant in error had the right to waive these provisions so far as requiring the contractor to comply with them had he not required the contractor to give a bond guaranteeing the faithful performance by him of those things mentioned in the contract, yet, when the plaintiff in error became interested, by virtue of the obligations evidenced by the bond, it then became the *duty* of the defendant in error, which he owed to the plaintiff in error, to demand of the contractor a substantial compliance of these terms of the contract, for the reason that such compliances furnished to the plaintiff in error a security in the hands of the defendant in error to reimburse the latter for any sums of money it would owe to the defendant in error, by reason of the failure of the contractor to comply with the terms of his contract.

This contract of the parties, evidenced by the two instruments, the one executed by Herbst and the defendant in error and the other executed by the plaintiff in error, are unambiguous in their terms, and need no construction. Upon the one hand, the contractor agreed with the defendant in error to build a brick house and repair another building, according to the specifications, furnishing all the labor and all of the material, payments for the labor to be made weekly, the amount of which was to be evidenced by a receipt from all of the men employed, showing full payment to all laborers, and every two weeks

payment for the material, to the extent of 75 per cent. of material furnished, based upon the receipts from the concerns furnishing the materials, showing full payments made to said concerns by Herbst.

The testimony shows that the amounts paid for labor by the defendant in error aggregated some $10,000, and the balance of the contract price representing materials furnished, paid by the defendant in error during the course of the construction, amounted to the remainder of the contract price, aggregating something less than $8,000. The defendant in error stated in a letter to the plaintiff in error this: "The building is practically finished except the tile which, you will note, has been allowed for, and a few other small items as follows: piping of a part of the building for gas, hanging screen doors, replacing broken light in sky light, cleaning up trash and rubbish around building. Mr. Herbst, however, has agreed to complete these items in the next few days."

It also appears they embraced in the amounts paid the contractor, and deducted therefrom a sufficient sum, by agreement of the parties, to pay for the finishing of the buildings, according to contract, except in the items which the letter states Herbst had agreed to complete "in the next few days." With the information in his possession at the time this agreement was made, the defendant in error had evidently reached the conclusion there were no outstanding bills either for labor or for material. However, after making this settlement, the defendant in error then discovered there were unpaid labor bills and unpaid material bills, of which he had no knowledge at the time he made the agreement with the contractor. He then paid these bills, and called upon the plaintiff in error for reimbursement. Had the defendant in error complied with the terms of the contract, in which the plaintiff in error became an interested party as surety, in the absence of any fraud, and no fraud was alleged, there could not have been any unpaid labor bills, and the defendant in error would have had in his possession information that the material bills, which the contractor had not paid, would have amounted at least to the sum of 25 per cent. of the whole of the bills for material furnished the contractor. These bills amounted to something more than $11,000 in fact, and the contractor would have had in his hands one-fourth of whatever sum he had paid for material, had the defendant in error performed the duties imposed upon him in the interest of the plaintiff in error by the terms of the contract heretofore quoted.

However, it appears from the testimony of the defendant in error himself that he not only did not retain in his hands 25 per cent. of the amount paid by the contractor for material, assuming that the contractor had paid, as he was required by the terms of the con-

tract to pay, the whole of the material bill presented, but that he did not pay all of the labor bills actually incurred. In this connection the plaintiff in error testified: "The amount of *material* still due and unpaid at that time (at the time he settled with the contractor and took over the job, by paying the contractor the full amount of the contract price, less the amount necessary to complete the contract) was $4,123.91. -I did not incur any *new* bills after Herbst threw up the job. When I sent them that statement (meaning the statement he sent to the plaintiff in error) I had paid out $18,317.80, *except those allowances I was given credit for them.* That amount included the credits. Later on, on account of bills incurred by Herbst, I paid *$1,016.90 for labor. That was labor bills that had not been paid when I gave the bonding company notice.* I paid $4,123.90 for *materials* and $1,016.90 for *labor.* Those bills *had already been incurred* by Herbst, and some of the parties had threatened suit on them. It was necessary for me to pay those bills in order for me to complete the ·building and clear the property."

So it appears from this testimony that none of the excess, beyond the contract price, was included in any of the expenses incurred by the defendant in error after he made the agreement with the contractor to finish the buildings himself, but that the amount necessary to finish the buildings was deducted from the contract price. He further testified that, when he took over the buildings, he had not in his hands any of the retainage for which the contract provided.

It further appears from the testimony, without contradiction, that many of the bills presented by the contractor, and paid by the defendant in error in full, embraced both material and labor. The plain language of the contract required the bills for labor to be presented as such and the bills for material to be separately presented for material furnished. This not having been done, and it clearly appearing that the contract provided that it should be done, there was a failure of duty which the defendant in error owed the plaintiff in error to comply with the terms of the contract in this respect. It further appears that the parties contemplated that the labor bills should reasonably amount to 60 per cent. of the contract price and the bills for material for the remainder. From this understanding it clearly appears that the defendant in error should have had in his hands, when the contractor notified the defendant in error he could not complete the job, 10 per cent. of the contract price, that is, 25 per cent. of 40 per cent. He did not retain anything, but, under a misapprehension of the situation, made final settlement with the contractor, and accepted the buildings in the condition in which they were at the time the settlement was made, retaining out of the con-

tract price a sufficient sum to complete the buildings, according to contract.

 The rule applicable to the plaintiff in error is thus stated by 32 Cyc. 73. "Sureties are said to be favorites of the law, and a contract of suretyship must be strictly construed to impose upon the sureties only those burdens clearly within its terms, and must not be extended by implication or presumption." This contract is simple, and states clearly the respective rights and duties of the parties. The burden of establishing the allegation that the plaintiff in error was liable rested upon the defendant in error. He has not discharged this burden, but by his own testimony demonstrates the fact to be that he had failed in several essential particulars to do that which, by the plain terms of the contract in the discharge of his duty to the plaintiff in error, he was required to do. The bills for material, which had been used by the contractor up to the time the defendant in error settled with him, amounted to $11,485.39. Of this sum $4,123.91 was unpaid, and their existence was unknown to the defendant in error. The defendant in error had paid material bills amounting to $7,381.48. In addition to the unpaid material bills, there were unpaid labor bills, which the defendant in error afterwards paid, amounting to $1,016.90. This fact was also unknown to the defendant in error, when he settled with the contractor and paid him the full contract price.

Had the defendant in error complied substantially with the plain terms of the contract, he would have had, as a basis for his payments to the contractor, vouchers in the form of receipts from each laborer that the full amount due the laborer had been paid by the contractor, and also vouchers showing that the contractor had paid the full amount to each material man for all of the material furnished up to the time the vouchers were presented. With these vouchers, which he was entitled to have, and which, under the law, he was required to have, in order to discharge his duty to the surety, no such condition could have arisen as did in fact arise. No labor bills would have been unpaid. All material bills would have been paid until the aggregate sum due for labor and material amounted to the contract price. But, in the meantime, the defendant in error would have had in his possession a retainage in a substantial amount which could have been used in diminishing the obligation of the plaintiff in error. The authorities are uniform in holding that a surety has the right to have the retainage percentage provided for in the contract applied to the exoneration of losses sustained by breach of the conditions of the bond. While the parties have agreed as to the law of the case, yet the following authorities support the conclusion we have reached: Ryan v. Morton, 65 Tex. 258; Bullard v. Norton, 107 Tex. 571, 182 S. W. 668; Larkin v. Pruett Lbr.

Co. (Tex. Civ. App.) 209 S. W. 443; Porter v. Hope (Tex. Civ. App.) 279 S. W. 535; Ætna Casualty & Surety Co. v. Robertson Lbr. (Tex. Civ. App.) 3 S.W.(2d) 895; Prairie State National Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412.

We therefore recommend that the judgment of the Court of Civil Appeals and that of the trial court, in favor of defendant in error against the plaintiff in error, be reversed, and that judgment be rendered that defendant in error take nothing, and that plaintiff in error recover of the defendant in error costs incurred in all the courts.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.